ELLA SCHELBERGER, Plaintiff, *v.* EDWIN J. SCHELBERG et al., Defendants.

Supreme Court, Trial Term, Queens County, March 26, 1943.

*Theodore J. Groh* and *David Krause* for plaintiff.

*Seymour Mork* for defendants.

DALY, J. This is an action to recover from the administrators with the will annexed of Mary M. Schelberg, deceased, the sum of $4,000 with interest at the rate of five per cent from October 27, 1938, to October 27, 1939, and thereafter at the rate of six per cent.

The decedent owned a first mortgage of $15,000 on premises 158 East 97th Street, New York City, upon which the plaintiff owned a second mortgage of $7,000. Sometime in October, 1934, the decedent brought an action to foreclose her mortgage and subsequently entered into negotiations with the owner of the equity to obtain a deed in lieu of foreclosure. An arrangement, which will hereafter be more fully discussed, was then made with the plaintiff, which resulted in the admitted execution by the decedent of the following writing (Plaintiff's Ex. 3):

" Oct. 27–1934

I hereby agree to give Mrs. Ella Schelberger a second mortgage of $4000.00 without interest for the first two years; 5% interest for the next three years; Said mortgage to be given on premises 158 E. 97th St. N.Y.C.; That Mrs. Mary M. Schelberg

may designate any other property for said mortgage. This agreement is subject to an agreement being reached in the foreclosure action now pending by me against Schelhoe Realty Co. Inc., et al.

MARY M. SCHELBERG.''

It is conceded that the negotiations with the owner culminated in the discontinuance of the foreclosure action and with the delivery of a deed to the decedent's daughter, the defendant Edith L. Schelberg; that the plaintiff executed and delivered to the decedent a satisfaction of her $7,000 mortgage, which was recorded in the office of the Register of New York County on November 3, 1934. It is undisputed that outside of the writing (Plaintiff's Ex. 3) the plaintiff received nothing for her $7,000 mortgage, except that the decedent made three interest payments of $80 each.

After issue was joined by the service of an answer denying the material allegations of the complaint, the defendants challenged the sufficiency of the complaint upon a motion for judgment on the pleadings. The plaintiff cross-moved for summary judgment. Both motions were denied. The defendants alone appealed. The Appellate Division affirmed the order of Special Term, sustaining the complaint, and stated (264 App. Div. 870): '' Issues are raised here which may not be disposed of summarily, such as whether there is not implied in the writing signed by the decedent a promise to pay the debt to secure which the second mortgage was to be given (*Simon* v. *Etgen*, 213 N. Y. 589, 594, 595; *Wood* v. *Duff-Gordon*, 222 id. 88, 91), and whether the payment of interest on the debt by the decedent for two years was not such a practical construction of the writing as to be of great probative force in determining its meaning. (*Woolsey* v. *Funke*, 121 N. Y. 87, 92; *Nicoll* v. *Sands*, 131 id. 19, 24.)''

There was testimony upon the trial with respect to a conference on October 27, 1934, in the office of Frank Borut, the decedent's attorney. While there is a conflict as to who was present at such conference, there is no dispute that Plaintiff's Exhibit 3 was composed and written by the decedent's attorney and signed by the decedent, and that the plaintiff had no attorney representing her. The court finds, as a fact, however, from all of the evidence, that both the plaintiff and the decedent were present at said conference, as were also the plaintiff's daughter, Ella Bender, and the decedent's son, Edwin, who is one of the defendants in this action. Ella Bender testified, in substance,

that the decedent said she did not want the plaintiff to lose everything and that she would give her $4,000 for her mortgage. The defendant, Edwin Schelberg, testified that his mother did not intend to owe the plaintiff $4,000, but that she intended merely to keep alive part of the mortgage to protect the plaintiff. Decedent's attorney testified that a few days before the conference the plaintiff and the decedent called at his office, and at that time the latter told him that she wanted to take care of the plaintiff so that she would not lose her money.

Upon a consideration of all the evidence adduced at the trial and the circumstances surrounding the entire transaction, the court finds that the decedent intended to give plaintiff $4,000 for her $7,000 second mortgage. Subsequent events sustain this conclusion. On the 30th day of October, 1934, the parties met at Misericordia Hospital where plaintiff turned over to the owner of the equity rents which she had collected under an assignment of rents, and obtained a receipt and release from him. The decedent then paid the owner of the equity the sum of $500, in return for which he signed a deed transferring the property to the decedent's daughter, and the foreclosure action was discontinued upon the delivery by the plaintiff of. a satisfaction of her $7,000 mortgage.

While the writing (Plaintiff's Ex. 3) is imperfect, it cannot be overlooked that it was the handiwork of the decedent's attorney, the plaintiff then being unrepresented, and any doubt as to its meaning should, in all fairness, be resolved against the decedent. (*Gillet* v. *Bank of America,* 160 N. Y. 549, 555; *Premium Coal Co.* v. *New Hampshire Fire Ins. Co.,* 265 App. Div. 320, 322; *Mutual Life Ins. Co.* v. *Hurni Packing Co.,* 263 U. S. 167, 174; *McKenna* v. *Metropolitan Life Ins. Co.,* 220 App. Div. 53, 59.)

But even though imperfectly expressed, the writing is instinct with obligation on the part of the decedent to pay the plaintiff $4,000. It has been held that " a mortgage is merely an interest by way of *security* for *debt* * * *." (Italics supplied.) (*Matter of City of New York* [*Braddock Ave., etc.*] 251 App. Div. 669, 672.) And as said in *Merritt* v. *Bartholick* (36 N. Y. 44, 44b): " The security cannot be separated from the debt, and exist independently of it." It is clear from the evidence and the circumstances of the situation, especially the long friendship between the parties, who trusted each other, that the decedent not only intended to be indebted to the plaintiff in the sum of $4,000, but to secure the payment of such debt by giving a second mortgage. It is

futile to speculate why the decedent failed to give the security she promised, but the fact remains that she *paid the plaintiff interest on $4,000* until a year before her death and, mortgage or no mortgage, such payments have strong probative value of an admission of debt. The interest payments are clearly referable to *this debt*. The writing (Plaintiff's Ex. 3) provided that no interest would be paid for the first two years and that five per cent would be paid for the next three years. While the interest paid by the decedent was at the rate of four per cent rather than five per cent, the first payment of such interest by a check dated April 13, 1937, covered the period during which interest started running under Plaintiff's Exhibit 3, and had written on the face thereof:— "6 mos. interest @ 4% on $4000.00 on 97 St. house; " the second check dated Oct. 27, 1937 had written on the face thereof:— " Interest for 6 months ending Oct. 30, 37 on $4000.00; " and the third check dated Oct. 22, 1938 had written on the reverse side thereof:— " Int. for Apr. 27 (six months)."

It seems clear that the payment of interest on $4,000, where no *other* debt or obligation existed, constitutes a practical construction of the writing, made by the decedent herself (*Woolsey* v. *Funke,* 121 N. Y. 87, 92; *Nicoll* v. *Sands,* 131 N. Y. 19, 24), which, if not conclusive, strongly buttresses the other evidence in the case that it was her intention to assume a *$4,000 debt* and not merely, as stated by the defendants' attorney on page four of the trial memorandum, " a gratuitous readiness to pay out of proceeds of the property itself when realized the $4,000, or to sell same subject to said $4,000 second mortgage so that the plaintiff could salvage whatever she could out of her original mortgage in the sum of $7,000."

Judgment is accordingly granted in favor of the plaintiff, as prayed for in the complaint. A thirty days' stay of execution is allowed to the defendants, with sixty days to make and file a case.